IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEELEY OLSON, *et al.*,

    Plaintiffs,

v.

A.R.T. INSTITUTE OF WASHINGTON, INC., *et al.*,

    Defendants.

Case No.: 8:24-cv-437-PX

## MEMORANDUM OPINION

Pending before the Court in this medical malpractice lawsuit is the motion to dismiss filed by the United States of America on behalf of the Government-affiliated Defendants ("the Government"), and the motion to dismiss or alternatively for summary judgment in their favor, filed by Defendant Drs. Jacques Cohen and Aidita James. *See* ECF Nos. 14 & 10-11. The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motions are GRANTED.

### I. Background

Plaintiffs Keeley and Dustin Olson ("the Olsons") have two children who suffer from a rare and fatal genetic disorder, Duchenne Muscular Dystrophy ("DMD"). ECF No. 1-3 ¶ 6. The Olsons wanted another child but wished to minimize the risk of having another baby with DMD. *Id.* ¶ 7. To that end, they consulted with Defendant Colonel Micha Hill, D.O. ("Dr. Hill"), a physician at the Walter Reed National Military Hospital ("Walter Reed"), who referred them to the A.R.T. Institute of Washington ("A.R.T."), an affiliated medical institution specializing in *in vitro* fertilization ("IVF"). *Id.* ¶ 7. Dr. Hill specifically recommended IVF and preimplantation genetic diagnostics to ensure that any embryo ultimately transferred to Keeley would be free of DMD. *Id.*

1

¶ 8.

In early 2018, the Olsons decided to go forward with IVF at A.R.T. *Id.* ¶ 10. At the time, Dr. Cohen was the CEO of A.R.T and Dr. James was its IVF Laboratory Director. *See id.* ¶¶ 4–5. The IVF process yielded eight embryos for the Olsons. *Id.* ¶¶ 10–12. Genetic testing identified two of the eight embryos as healthy, non-carriers of DMD. *Id.* ¶ 12. The other six were carriers of DMD. *Id.* Accordingly, the Olsons gave A.R.T. permission to discard the six affected embryos and, in fact, believed that A.R.T. had done so. *Id.* ¶¶ 13 & 15. One of the two healthy embryos was successfully transferred to Keeley, and she later gave birth to a child without DMD. *Id.* ¶ 14. The remaining healthy embryo was preserved for future implantation. *Id.* ¶ 15.

Fast forward to June of 2020. The Olsons decided to transfer the second healthy embryo to Keeley. *Id.* ¶ 16. Unbeknownst to the Olsons, A.R.T. had not discarded the six genetically-compromised embryos. *Id.* ¶ 19. And then, unidentified embryologists (the "Doe embryologists") selected one of the embryos affected by DMD for implantation. *Id.* According to Dr. James, the embryologists were suffering from "COVID Brain" and mistakenly chose the wrong embryo for transfer. *Id.* ¶ 20.

The error was quickly discovered. The day after transfer, Dr. Hill informed the Olsons about the mistake and discussed their options. *Id.* ¶ 21. Specifically, Dr. Hill advised that Keeley could: (1) take medication that would prevent the embryo from implanting and thus extinguish any chance of a viable pregnancy; (2) wait, and if Keeley gets pregnant, terminate the pregnancy; or (3) if the transfer results in pregnancy, elect not to terminate and risk birthing a child with DMD. *Id.*

After serious contemplation, Keeley elected the first option. *Id.* ¶¶ 24–26. The medications caused her to experience intense cramping and heavy bleeding. *Id.* ¶ 27. She also developed anxiety and depression from having to make this emotionally and morally fraught decision. *Id.* ¶ 28. Further, Keeley worried about the fallout from friends and family who would judge her

decision to chemically terminate the pregnancy.  *Id.*

Thereafter, the Olsons confirmed with A.R.T. that the healthy embryo was still available for transfer.  *Id.* ¶ 29.  Given their recent experience with A.R.T, the Olsons researched whether another provider could perform the transfer.  *Id.* ¶ 30.  Ultimately, they learned that transporting the healthy embryo to another provider could risk the viability of the implantation, so the Olsons elected to have A.R.T. perform the transfer.  *Id.*  After a successful procedure, Keeley gave birth to a healthy baby on September 24, 2021.  *Id.* ¶ 31.

Based on the erroneous embryo transfer, the Olsons originally sued Defendants in state court for three common law claims: gross negligence against A.R.T., Drs. Hill, James, and Cohen, as well as the Doe embryologists (Count One); medical negligence against the same Defendants (Count Two): and breach of contract against Walter Reed and A.R.T. only (Count Three).  *Id.* ¶¶ 37–47.  The Government timely removed the case to this Court.  *See* ECF No. 1-2; *see also* 28 U.S.C. §§ 1346, 1441, 1442 & 2679(d).  Now pending are Defendants' respective motions to dismiss.  ECF Nos. 10-11 & 14.  The Court considers each in turn, beginning with the Government's motion.

## II.    Government's Motion

The Government first contends that the contract claim against Walter Reed must be dismissed because under the Tucker Act, 28 U.S.C. §§ 1491 & 1346(a)(2), the United States Court of Federal Claims has exclusive jurisdiction over all non-tort claims seeking money damages in excess of $10,000.  ECF No. 14-1 at 7.  The Motion implicates this Court's power to hear the claim and is assessed under Federal Rule of Civil Procedure 12(b)(1).  *See Randall v. United States*, 95 F.3d 339, 344–45 (4th Cir. 1996).  "The plaintiff bears the burden of establishing subject matter jurisdiction."  *Duncan v. Kavanaugh*, 439 F. Supp. 3d 579, 581 (D. Md. 2020) (citing *Demetres v. East West Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015)).  Where, as here, the defendant argues

that the complaint lacks sufficient facts by which jurisdiction may be inferred, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).

Indisputably, the Olsons seek damages exceeding $10,000. ECF No. 1-3 at 8. Thus, jurisdiction lies exclusively with the Court of Federal Claims. *See Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 578 (4th Cir. 2017). The Olsons concede as much. ECF No. 18 at 3. But they ask that the Court "toll" the contract claim against Walter Reed so that they may refile it in the Court of Federal Claims. *Id*. This the Court cannot do. Because the Court lacks jurisdiction to hear the contract claim at all, it cannot take any further action on it and must dismiss the claim without prejudice. *Meridian*, 855 F.3d at 578 (4th Cir. 2017). Accordingly, Count Three is dismissed as to Walter Reed without prejudice for want of jurisdiction.

The Government next argues that the Complaint fails to make plausible gross negligence (Count One) or professional negligence (Count Two) against Dr. Hill or Walter Reed. ECF No. 14 at 5. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court must be able to deduce "more than the *mere* possibility of misconduct"; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *See Ruffin v. Lockheed Martin* Corp., 126 F. Supp. 3d 521, 526 (D.

Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016).

Although gross negligence and negligence are separate causes of action, *see Barbre v. Pope*, 402 Md. 157, 187 (2007), each require at a minimum plausible averment of negligence. *See Cooper v. Rodriguez,* 443 Md. 680, 708 (2015) ("Ordinarily, unless the facts are so clear as to permit a conclusion as a matter of law, it is for the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence.") (quoting *Taylor v. Harford Cnty. Dep't of Social Servs.*, 384 Md. 213, 229 (2004) (citation and internal quotation marks omitted).  In the context of healthcare treatment, a negligence claim survives dismissal where some complaint facts make plausible that the defendant provider breached the applicable standard of care in the relevant medical field and that breach was the proximate cause of the plaintiff's injury. *See Lawson v. United States*, 454 F. Supp. 2d 373, 416 (D. Md. 2006) (citing *Weimer v. Hetrick*, 309 Md. 536, 553 (1987)).  *See also Ford v. United States*, 165 F. Supp. 3d 400, 423 (D. Md. 2016) (citing *Upper Chesapeake Health Ctr., Inc. v. Gargiulo*, 223 Md. App. 772 (2015) (unreported)).

When viewing the Complaint facts most favorably to the Olsons, Dr. Hill did nothing more than recommend the Olsons proceed with IVF at A.R.T, and then advise them of their options after the wrong embryo had been implanted. ECF No. 1-3 ¶¶ 8, 18 & 21.  The Complaint does not allege any facts suggesting that Dr. Hill played a role in the erroneous embryo transfer, and so, no facts make plausible that any of Dr. Hill's acts or omissions fell below the standard of care or proximately caused injury to the Olsons.  ECF No. 14-1 at 5.

To save the claim, the Olsons attempt to inject new facts through their opposition; namely, that Dr. Hill "was acting as Ms. Olson's gynecological services provider," and was the "implanting doctor," who "blindly" transferred the DMD-affected embryo that A.R.T. had provided.  ECF No. 18 at 1–2.  But the Olsons may not amend the Complaint through briefing.  *See Zachair, Ltd. v.*

*Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) ("[Plaintiff] is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.") (citing *Henthorn v. Dept. of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994)). Thus, based on the averred facts, the negligence claims fail as to Dr. Hill.

Similarly, the negligence claims cannot proceed against Walter Reed. As the Government rightly points out, no facts make liability plausible as to the hospital. ECF No. 14-1 at 6. Walter Reed may be held liable for the tortious actions of its employees who are acting within the scope of their employment. *See Williams v. Dimensions Health Corp.*, 480 Md. 24, 37–39 (2022); *see also* Restatement (Second) of Agency, § 267; Restatement (Second) of Torts, § 429. Apart from Dr. Hill, the Complaint describes no other Walter Reed employee who played any role in the Olsons' IVF treatment. ECF No. 1-3. Indeed, other than naming the hospital, the Complaint offers no liability theory whatsoever regarding Walter Reed. *Id.* Such threadbare allegations cannot survive challenge. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Counts One and Two fail against Walter Reed and must be dismissed.

### III. Drs. Cohen and James' Motion

Similar to Dr. Hill and Walter Reed, Drs. Cohen and James argue that no Complaint facts make plausible the negligence claims as to them.[1] ECF Nos. 10-11. The Court agrees. As to Dr. Cohen, the Complaint simply avers that he is the CEO of A.R.T. ECF No. 1-3 ¶ 5. But no facts

---

[1] Because Drs. James and Cohen filed their motion while the matter was in state court, they rely on the dismissal standard articulated in Maryland Rule 2-322. ECF No. 10-11. However, the Court must treat the motion pursuant to Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Rowland v. Patterson*, 852 F.2d 108, 110 (4th Cir. 1988), *on reh'g*, 882 F.2d 97 (4th Cir. 1989) ("Federal courts apply federal rules of procedure, both those promulgated in the Federal Rules of Civil Procedure as well as wholly judge made procedural rules, unless the *Erie* doctrine commands otherwise"). Further, because the case has yet to proceed to formal discovery, the Court declines to treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Roswell v. Mayor & City Council of Baltimore*, 671 F. Supp. 3d 607, 622–23 (D. Md. 2023), *aff'd*, No. 23-1567, 2023 WL 8728503 (4th Cir. Dec. 19, 2023) ("When a party submits a motion to dismiss or for summary judgment *in the alternative*, the court has discretion to determine which standard is implicated in deciding the motion.") (citing *Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.,* 788 F. Supp. 2d 431, 436–37 (D. Md. 2011)).

permit the plausible inference that Dr. Cohen participated at all in the wrongful transfer of the embryo afflicted with DMD. And where an officer "takes no part in the commission of the tort committed by the corporation, he is not personally liable therefor unless he specifically directed the particular act to be done, or participated or cooperated therein." *Tedrow v. Deskin*, 265 Md. 546, 551 (1972). The negligence claims thus fail as to Dr. Cohen.

Regarding Dr. James, all she is said to have done was inform the Olsons that the embryologists who mistakenly selected the DMD-affected embryo had "COVID brain." ECF No. 1 ¶ 20. Once again, the Olsons attempt to insert additional facts through its briefing, contending in conclusory fashion that Dr. James "played a direct role" in establishing procedures to avoid erroneous transfers. ECF No. 10-14 at 1–2. The Court cannot consider those facts here. But even if it could, simply because Dr. James may have established a presumably proper protocol that others then violated does not permit the inference that Dr. James was negligent. Nor does merely alleging a nebulous "failure to enforce" such nondescript procedures constitute a sufficient averment to make plausible that Dr. James' individual acts or omissions fell below the pertinent standard of care, causing injury to the Olsons. Thus, the negligence claims fail as to Dr. James.[2]

## IV. Dismissal Without Prejudice

Although the Court remains skeptical that the Olsons can cure the identified pleading defects as to the negligence claims, the Court recognizes that the case is in its infancy, and that they should be afforded the opportunity to amend the Complaint. *See Ostrzenski*, 177 F.3d at 252–53 (4th Cir. 1999) (explaining that a district court should not dismiss a complaint with prejudice under

---

[2] The pending motions do not address the sufficiency of the claims against the "Doe embryologists," or even whether the Olsons may properly proceed against such "Doe" defendants. Although "[f]ederal courts have generally frowned upon" Doe suits, such claims are permissible "only against 'real, but unidentified, defendants.'" *Mendygral v. Mayor and City Council of Ocean City,* No. CV ELH-21-1381, 2022 WL 125275 at *7 (D. Md. Jan. 13, 2022) (quoting *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982)). The claims may be dismissed, however, if the complaint fails to put each Doe defendant on notice of the specific facts on which liability rests. *Id.* At this juncture, the Court takes no position on the continued viability of the claims against the Doe embryologists.

Fed. R. Civ. P. 12(b)(6) without first giving the plaintiff leave to amend).  Accordingly, within 14 days from the date of this Opinion and Order, the Olsons may move for leave to file an amended complaint to cure the pleading deficiencies identified in Counts One and Two, if possible.  Failure to so move will result in dismissal of those claims with prejudice and without further notice.

**V.     Conclusion**

For the foregoing reasons, the motions to dismiss are granted.  The contract claim against Walter Reed (Count Three) is dismissed for lack of jurisdiction.  The negligence claims as to all Defendants save for the Doe embryologists (Counts One and Two) are likewise dismissed.  Within 14 days from the date of this Opinion and Order, the Olsons shall file an amended complaint to cure the pleading deficiencies as to Counts One and Two, if possible.  Failure to file an amended complaint will result in dismissal with prejudice of the negligence claims as to Dr. Hill, Walter Reed, Dr. Cohen and Dr. James.  A separate Order follows.


| January 6, 2025 | /s |
|---|---|
| Date | Paula Xinis<br>United States District Judge |